MARK FERRARIO, ESQ.
Nevada Bar No. 1625
JASON HICKS, ESQ.
Nevada Bar No. 13149
**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: FerrarioM@gtlaw.com
        Jason.Hicks@gtlaw.com

*Attorneys for Resorts World Las Vegas, LLC;*
*Tan Sri Lim Kok Thay aka KT Lim; Zachary Koep;*
*and Daniel Madurzak*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT J. CIPRIANI, JAMES RUSSELL, and ANDREW CHENG TAO DO,<br><br>Plaintiffs,<br><br>v.<br><br>GENTING BERHAD; RESORTS WORLD LAS VEGAS, LLC; TAN SRI LIM KOK THAY aka KT LIM; SCOTT SIBELLA; DAVID CHESNOFF; MATTHEW FORBES; DONI TAUBE; ZACHARY KOEP; JOSEPH TATONETTI; DANIEL MADURZAK; TONYA HENDERSON; ELIE SAMARANI; BRANDON SATTLER,<br><br>Defendants. | Case No.:  2:25-cv-2396-JCM-DJA<br><br><br>**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY RESORTS WORLD LAS VEGAS, LLC, AND KT LIM**<br><br><br>*Oral Argument Requested* |

Defendants Resorts World Las Vegas, LLC and Tan Sri Lim Kok Thay aka KT Lim, by and through their counsel of record, the law firm of Greenberg Traurig, LLP, submit this motion to dismiss the First Amended Complaint (ECF No. 36) pursuant to Fed. R. Civ. P. 12(b)(6).  This motion is

ACTIVE 726205026v1

made and based upon the following memorandum of points and authorities, the papers and pleadings on file herein, and any oral argument that the Court entertains at the time of hearing, if one is set.

## MEMORANDUM OF POINTS AND AUTHORITIES

Opportunistic Plaintiffs Robert Cipriani, James Russell, and Andrew Cheng Tao Do have manufactured a 107-page, 309-paragraph First Amended Complaint ("FAC") that, while long on form, ultimately says very little. It is the antithesis of Fed. R. Civ. P. 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" and allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The FAC is patched together utilizing news reports and other publicly available information concerning Resorts World Las Vegas, LLC's ("Resorts World") dealings with regulators from the Nevada Gaming Control Board and the Department of Justice concerning the actions of non-parties to this case, none of which have anything to do with these Plaintiffs. These irrelevant accusations are intended to smear the Defendants and purport to form the basis of *310* individual predicate acts that Plaintiffs claim support the existence of a racketeering enterprise leading to their own alleged harms. The FAC's blunderbuss, "shock and awe" approach violates federal pleading mandates and, yet, quickly falls apart when examined.

By way of introduction, Plaintiff Cipriani is a somewhat well-known, self-promoting gambler who views himself as a professional informant and do-gooder. He goes by the pseudonym "Robin Hood 702" and, apparently, spends his time gambling at Las Vegas casinos with the dual goals of self-policing criminal misconduct and giving away his winnings to those less fortunate. But reality appears in stark contrast to the glowing self-portrait Cipriani paints in his FAC. *See, e.g.,* ECF No. 36, at ¶¶ 16-19, 62-79. Cipriani has a reported history of alleged ties to convicted drug trafficker Owen Hanson, whose exploits are the subject of an Amazon documentary titled "Cocaine

ACTIVE 726205026v1

Quarterback: Signal-Caller for the Cartel."[1] Cipriani is characterized not as the philanthropic, morally sound beacon he now portrays, but instead as a "money laundering magician" who assisted Owen in cleaning illicit funds for the cartel.[2]  When Cipriani reportedly gambled away $2.5 million of apparently illicit funds and faced threats, he decided to become an FBI informant and signed a proffer agreement with the government.[3]  Thus began his service as a quasi-professional government informant, a role that he has attempted to parlay into another source of income.[4]  As Cipriani shared with the Hollywood Reporter, he has been developing a scripted take on his experiences, which he calls "Jackpot" after the codename the FBI gave him, among other Hollywood projects.[5] Thus, the consequences of his own alleged bad acts and his desire to publicize and monetize them, and not his unwavering moral compass, appear to be what drive Cipriani.

As part of that, Cipriani has staged a years-long attack on Resorts World and certain of its employees that appears to stem from an interaction he had with another patron in late-2021, Robert Alexander, who is now deceased.  ECF No. 36, at ¶¶ 19, 98-132.  In particular, Cipriani took issue with Alexander's presence in the casino, which led to an altercation at Resorts World in November 2021 between Cipriani and Alexander, who was an elderly man confined to an electric mobility scooter at the time.  *Id*. at ¶¶ 76-79, 90.  Cipriani snatched Alexander's cellphone out of his hands and scurried off through the casino, forcing Alexander to follow him in his scooter.  *Id*. at ¶ 114-16. Cipriani was arrested and charged by the Clark County District Attorney's office with larceny from

---

[1]  "Cocaine Quarterback: Gambler Says He Was Dealt Unfair Hand in Amazon's True Crime Docuseries" (https://www.hollywoodreporter.com/tv/tv-news/cocaine-quarterback-gambler-tricked-by-producers-1236388697/) (last accessed July 15, 2026). The Hollywood Reporter interviewed Cipriani for this September 2025 article.  For purposes of this Motion, only, Defendants concede that some of the article's content is "subject to reasonable dispute" and thus not proper for judicial notice in its entirety under Fed. R. Evid. 201 on a motion to dismiss.  That said, some of it is, such as Cipriani's own statements.  Defendants raise it for context, only, and do not ask the Court to adjudicate its veracity at this stage.

[2] *See* fn. 1.

[3] *See* fn. 1.

[4] A verified agitator always on the hunt for press and a payday, Cipriani has also targeted former Paramount Skydance President, Jeff Shell, and the pair are engaged in a lawsuit in Los Angeles Superior Court. https://www.latimes.com/entertainment-arts/business/story/2026-03-09/paramounts-jeff-shell-hit-with-150-million-fraud-lawsuit-by-gambler (last accessed July 15, 2026).

[5] *See* fn. 1.

ACTIVE 726205026v1

person and robbery against an elderly victim.  *Id*. at ¶ 120; ECF No. 40-7 at Exhibit Page 204.[6]  The state court found probable cause for Cipriani's arrest and he was released on bail subject to, among other conditions, having no contact with anyone at Resorts World and staying away from the property. ECF No. 40-7 at Exhibit Page 204 (11/20/2021 entry) and Page 205 (01/10/2022 entry).

Resorts World also caught Cipriani past posting bets at blackjack.  ECF No. 36, at ¶ 123.  This is cheating which, as a professional gambler, Cipriani surely knew.  As such, he was referred to the Nevada Gaming Control Board, an enforcement agent investigated the incident, and Gaming submitted an affidavit of arrest.  Exhibit 1, hereto (compilation of documents from Justice Court Case No. 21-CR-057146), at Exhibit Pages 017-019 (Affidavit of Arrest).[7]  The State filed a criminal complaint against Cipriani for commission of a fraudulent act in a gaming establishment, a Category C felony.  *Id*. at Exhibit Page 001.  The court found probable cause for his arrest.  *Id*. at Exhibit Page 015.

Cipriani pleaded guilty to a lesser offense of disorderly conduct.  *Id.* at Exhibit Page 016; ECF No. 40-8 at Exhibit Page 208 (05/04/2022 entries).  Cipriani was ordered as a sentencing condition to "stay away and out of Resorts World properties" and to "have no contact (electronic or in person) with Resorts World officers, board members, employees" and their families.  Exhibit 1 at Exhibit Page 016; ECF No. 40-8 at Exhibit Page 208 (05/04/2022 entry, subparagraphs 3-4).  While Cipriani now attempts to paint himself as an innocent victim, his own pleas establish probable cause for his arrest and his guilt.  In which case, the Ninth Circuit instructs that courts "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit[,]" even on a motion to dismiss.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Alexander and his son then sued Cipriani in state court in 2022, Cipriani filed a counterclaim, and the Alexanders and Cipriani stipulated to dismiss all claims, with prejudice, in 2024.  Exhibit 2 (docket in *Robert Alexander v. Robert Cipriani*, Eighth Judicial District Court, Clark County, Case No. A-22-846789-C).[8]

---

[6] Resorts World joins in Defendant Sibella's "Request for Judicial Notice" at ECF No. 40 and requests that the Court take judicial notice under Fed. R. Evid. 201(b)(2) and (c)(2).

[7] Resorts World requests that the Court take judicial notice under Fed. R. Evid. 201(b)(2) and (c)(2).

[8] Resorts World requests that the Court take judicial notice under Fed. R. Evid. 201(b)(2) and (c)(2).

In the midst of the *Alexander v. Cipriani* state court proceedings, Cipriani filed a federal lawsuit against Resorts World and Scott Sibella containing more condensed but directionally identical (and equally absurd) factual allegations as the ones at issue in this lawsuit, primarily focused on, inter alia, his interaction with Alexander at Resorts World in late 2021, complaints about Sattler, and claims that Resorts World and Sibella coordinated to "silence an inconvenient patron." ECF No. 40-2, at Exhibit Page 9, ln. 22. Cipriani asserted claims against Resorts World and Sibella for negligence, innkeeper liability, negligent training, supervision, and retention, intentional infliction of emotional distress, civil conspiracy, and concert of action. *Id*. at Exhibit Pages 016-023. The Hon. Miranda Du dismissed Cipriani's complaint, with prejudice, and entered judgment in favor of Resorts World in October 2024. ECF No. 40-4, at Exhibit Pages 181-198. Cipriani appealed to the Ninth Circuit and, apparently, hired a new set of attorneys to begin fashioning this lawsuit while his appeal was pending. In November 2025, the Ninth Circuit affirmed Judge Du's dismissal of the IIED, conspiracy, concert of action, and negligent supervision claims, and reversed and remanded for further proceedings his claims for negligence, innkeeper liability, and negligent supervision based upon the Ninth Circuit's determination that judicial estoppel did not preclude their assertion. ECF No. 40-6, at Exhibit Pages 200-203. Cipriani's remaining claims in that case are now in the discovery phase.[9]

While it is no surprise to see Cipriani at the helm of another attack against Resorts World, Plaintiff James Russell's presence in the case is more puzzling. The FAC does not reveal any meaningful connection between Cipriani and Russell personally, nor does it articulate overlap in the factual allegations underpinning their claims. Rather, Russell appears to be a passenger in Cipriani's side-car. Russell describes himself as a "successful businessman in the steel industry" who claims that he and "other businesspeople in the community were victims of a massive investment fraud executed by Defendant Brandon Sattler. . .who cheated Plaintiff Russell and his partners out of approximately $10 million." ECF No. 36, ¶ 20. Sattler, who was not employed by Resorts World, is allegedly the owner and operator of a company that installed video systems in businesses. *Id*. at ¶ 82. Russell claims he loaned Sattler and his partners money in 2016 but was not repaid. *Id*. at ¶ 83.

---

[9] This presents preclusion issues which Resorts World anticipates Defendants Sibella will address in his own brief, and which will be joined by Resorts World.

ACTIVE 726205026v1

Russell alleges that he initiated involuntary bankruptcy proceedings against Sattler in 2018 (years before Resorts World opened) and secured a judgment for nondischargeability of debt in 2021. *Id*. at ¶¶ 24, 37. The only apparent connection to Resorts World is Russell's claim that the casino permitted Sattler to gamble "a significant portion" of that money in the years following. *Id*. at ¶ 37. The FAC is devoid of facts plausibly demonstrating that the money Russell and his unnamed partners loaned to Sattler in 2016 was the same money that Sattler gambled at Resorts World in 2021. Nor does the FAC sufficiently identify a workable legal theory that could impose liability on a casino under these facts. Russell's inclusion in this suit is perhaps even more desperate than Cipriani's own claims.

Lastly, Plaintiffs amended their claims in March 2026 to add another plaintiff, Andrew Do. The FAC alleges that Do was employed by Resorts World as a surveillance officer from 2022-2024. *Id*. at ¶¶ 38, 132. Do claims he "turned his attention to illegal and suspicious activities in Resorts World" and in turn "was unceremoniously terminated in a blatant action motivated to silence [him] as a whistleblower and to retaliate against him for raising concerns of significant illegal activities." *Id*. at ¶ 38. Do has no apparent connection to Cipriani or Russell nor are there any facts alleged in the FAC linking Do and his alleged harms to Cipriani's arrest (before Do started working at Resorts World) or Russell's loans to Sattler (before Resorts World even opened). Nonetheless, Do joins in the RICO claims and asserts claims for whistleblower retaliation and wrongful termination stemming from his prior employment at Resorts World. In addition to Resorts World, Do names Genting, Sibella, and his former supervisors, Zachary Koep and Daniel Madurzak, as defendants in these two new claims.

Based upon the foregoing, Plaintiffs assert seven claims for relief for: (1) Participation in a Racketeer Influenced and Corrupt Organization (18 U.S.C. § 1962(c)) (*Id*. at ¶¶ 212-260); (2) RICO Conspiracy (18 U.S.C. § 1962(d)) (*Id*. at ¶¶ 261-63); (3) Retaliation and Witness Intimidation (*Id*. at ¶¶ 264-74) (42 U.S.C. § 1985(2)); (4) Civil Rights and False Arrest (42 U.S.C. § 1983) (*Id*. at ¶¶ 275-82); (5) False Arrest (Nev. Rev. Stat. §171.235 and § 200.460) (*Id*. at ¶¶ 283-90); (6) Nevada Whistleblower Retaliation (NRS 613.340-613.435) (*Id*. at ¶¶ 291-300); and (7) Wrongful Termination in Violation of Public Policy (Nevada Common Law) (*Id*. at ¶¶ 301-09). Cipriani joins

ACTIVE 726205026v1

claims one through five, Russell joins claims one and two, and Do joins claims one, two, six, and seven.

## II.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not assume the truth of "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *State Farm Mut. Auto. Ins. Co. v. Peter J. Hanson, P.C.*, 2017 WL 3189026, at *2 (W.D. Wash. July 27, 2017), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Chavez v. United States*, 683 F.3d 1102, 1008 (9th Cir. 2012) (conclusory statements and formulaic recitations of the elements of a cause of action are insufficient); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (no need to accept allegations contradicted by judicially noticeable facts).  And a court need not grant leave to amend where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *Johnson v. American Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987) ("[F]utility includes the inevitability of a claim's defeat on summary judgment.").

Further, Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This heightened pleading standard applies to claims for which fraud is an element (*e.g.,* RICO) and claims for which Plaintiffs rely on a pattern of fraudulent conduct.  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003). When a claim "is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b)," it may be dismissed. *Id*.

Finally, both Fed. R. Civ. P. 8(a) and 9(b) require allegations that identify what each defendant allegedly did to violate the law, and notice that cannot be satisfied with generalized or group pleadings. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (dismissing complaint "with general allegations that the 'Defendants' engaged in fraudulent conduct but attribute[d] specific misconduct only to [some defendants]"); *Aquilina v. Certain Underwriters at Lloyd's Syndicate #2003*, 406 F. Supp. 3d 884, 898-99 (D. Haw. 2019).

ACTIVE 726205026v1

## III.     ARGUMENT

Plaintiffs' FAC suffers numerous incurable defects. Initially, it violates Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief" and its mandate that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d)(1). Failing to comply with Rule 8's requirement justifies dismissal of a complaint. *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981). Shotgun pleadings such as the FAC improperly seek to "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to [their] allegations." *Underwood v. O'Reilly Auto Parts, Inc.*, 671 F. Supp. 3d 1180, 188 (D. Nev. 2023) (quotation omitted). This approach is "altogether unacceptable" and the type of tactic that "exact[s] an intolerable toll on the trial court's docket, lead[s] to unnecessary and unchanneled discovery, and impose[s] unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997). The FAC should be dismissed based upon its violations of Rule 8, alone. *See Lapena v. Las Vegas Metro. Police Dep't*, No. 2:21-cv-2170-JCM-NJK, 2024 WL 1345226, at *3-4 (D. Nev. Mar. 29, 2024) (dismissing "overly verbose" and "confusing complaint" for noncompliance with Rule 8); *Washington v. Baenziger*, 656 F.Supp. 1176 (N.D. Cal. 1987) (dismissing 86-page, 33-cause of action, 21-defendant complaint for failure to comply with Rule 8's short and plain statement requirement).

Even were the Court to allow the FAC to move forward in its current form, the first five claims are barred by the applicable statutes of limitations. And even were that not the case, the law plainly does not – and cannot – support the facts alleged. The sixth and seventh claims are alleged by Plaintiff Do as a former employee against individual defendants who did not employ him. While conceivable he could allege potential claims against Resorts World as his former employer if the facts are available, they are purely state law claims and this Court, after dismissing the federal claims which serve as the  jurisdictional hook, should not exercise supplemental jurisdiction over what amounts to an employment dispute under state law. For the following reasons, the FAC should be dismissed in its entirety.

ACTIVE 726205026v1

**1. The RICO Claims are Time-Barred (Counts One and Two)**

The first and second claims for relief alleging violations of RICO should be dismissed as time-barred. The statute of limitations for a RICO claim is four years. *Evans v. Ariz. Cardinals Football Club, LLC*, 761 Fed. Appx. 701, 703 (9th Cir. 2019) (citing *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)). The period begins when the plaintiff knew or should have known of his injury, *not* when he claims to have discovered an alleged racketeering pattern. *Evans*, 761 Fed. Appx. at 703; *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (Supreme Court rejected the "injury and pattern discovery" rule, holding instead that "a discovery of the injury, not discovery of the other elements of a claim, is what starts the clock [for civil RICO claims].").

Sifting through its verbosity, the FAC at bottom traces back to two alleged injuries. The first is Cipriani's claim that "[a]s a result of" Resorts World's decision to ban him from the property, "Cipriani suffered substantial damages since his long-time livelihood, high-stakes gaming, was taken away…[and he] suffered significant harm – as a professional gambler, he was deprived of his livelihood for over four years…his losses reached millions of dollars; his reputation suffered serious harm." ECF No. 36, ¶ 19. Cipriani further alleges that he suffered an "illegal and retaliatory false arrest on November 19, 2021" while at Resorts World (*id*., ¶ 79) and that certain individual defendants then submitted a "false and fabricated report to the Nevada Gaming Control Board, dated November 26, 2021[.]" (*id*., ¶ 123). Cipriani's November 2021 arrest, from which his claim for damages admittedly stems, triggered the statute of limitations. *Evan*s, 761 Fed. Appx. at 703; *Rotella*, 528 U.S. at 555. Thus, he was required to file his RICO claims no later than November 26, 2025. He did not file this lawsuit until December 3, 2025, more than four years after he knew or should have known of his alleged injury. Cipriani attempts to get ahead of the statute of limitations issue by arguing that they are timely because he "did not discover, and could not reasonably have discovered, the full scope of Defendants' racketeering enterprise" until 2023 or 2025. ECF No. 36, ¶ 129. Doubtful as that is, even crediting Cipriani's assertion, his claim is time-barred because in the Ninth Circuit the limitations period begins to run when the plaintiff knew or should have known of his injury, not when he discovered a racketeering pattern. *Evans*, 761 Fed. Appx. at 703; *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (Supreme Court rejected the "injury and pattern discovery" rule, holding

ACTIVE 726205026v1

instead that "a discovery of the injury, not discovery of the other elements of a claim, is what starts the clock [for civil RICO claims]."). Cipriani's claimed "injury" is his November 2021 arrest, which is what started the four-year period. Cipriani's RICO claims are therefore time-barred.

The same is true with respect to plaintiff Russell, who alleges that he loaned defendant Sattler money beginning in 2016 and that by January 2021, he obtained a nondischargeable court order against Sattler in his bankruptcy case. ECF No. 36, ¶¶ 36-37. Russell's attenuated damages theory is that Resorts World allowed Sattler to gamble at its casino notwithstanding Sattler's bankruptcy. Russell then takes an untenable leap in logic and argues that, at some point after January 2021, Sattler must have gambled away the funds Russell loaned him back in 2016, at Resorts World, and that Resorts World for some unstated reason should have known the funds belonged to Russell and were traceable to the private loans he gave Sattler many years earlier. Russell does not include any factual allegations plausibly demonstrating the same.

The enormous gaps in Russell's causal theory are addressed elsewhere but, even assuming for the moment his logic was airtight, Russell's RICO claims were due no later than June 2025, which is four years after he alleges Resorts World began operating the racketeering enterprise to which he connects his claimed losses. ECF No. 36, ¶ 37. Indeed, the FAC's own imbedded text exchanges show Cipriani and defendant Tatonetti discussing Sattler and his bankruptcy between July and October 2021. *Id.* at ¶ 93; *see also id.* at ¶ 95 ("Plaintiff Cipriani observed Defendant Sattler gambling at the Resorts World casino on at least five (5) other occasions[] [f]rom the date of Resorts World's opening to roughly November 21, 2021" when Cipriani was arrested). Russell's RICO claims were not filed until December 3, 2025, more than four years after he knew or should have known of his alleged injury. While the FAC contains a general assertion that "Defendants' racketeering enterprise constitutes a **continuing** violation" such that "each [] act caused new and independent injury to Plaintiffs and restarted the limitations period[,]" (*Id.*, ¶ 132) (emphasis in original), they make no legitimate factual showing of the same. Because the limitations period in the Ninth Circuit runs at the point of injury, not discovery of a racketeering enterprise, new predicate acts will only restart the limitations period if they are genuinely new and independent, causing a new and accumulating injury. *Grimmett*, 75 F.3d at 513. A defendant must thus engage in an "overt act" that is "not merely a

ACTIVE 726205026v1

reaffirmation of a previous act." *Id.* Importantly, a "plaintiff cannot use an independent, new act as a bootstrap to recover for injuries caused by other predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 182 (1997) (*citing Grimmett*, 75 F.3d at 513). Accordingly, Russell's RICO claims are time-barred as well.

It appears that Plaintiffs may have amended their complaint to add Plaintiff Do in an effort to "restart" the limitations period and save their RICO claim. Their attempt must fail. As explained, Do's claims are employment claims against Resorts World stemming from his termination in December 2024. ECF No. 36 at ¶ 293. They have no connection, whatsoever, to Cipriani or Russell. Again, the FAC admits that Cipriani had been arrested and banned from Resorts World the year before Do started working there. *Compare id*. at ¶ 79 (Cipriani was arrested November 19, 2021) *with* ¶ 38 (Do was hired in 2022). As to Russell, there is no indication in the FAC that Do knew him, either, or that Russell's 2016-2018 loans to Sattler otherwise had any factual overlap with Do's employment at Resorts World in 2022-2024. Do's addition to this lawsuit is the precise type of "bootstrapping" effort to save a stale RICO claim that the law does not permit. *Klehr*, 521 U.S. at 182; *Grimmett*, 75 F.3d at 513.

### 2. Plaintiffs Cannot Establish Standing or Causation for Their RICO Claims

Even were the RICO claims timely, they suffer additional incurable defects.

RICO requires Plaintiffs to allege that each Defendant engaged in (1) conduct; (2) of an enterprise that affects interstate commerce; (3) through a pattern; (4) of racketeering activity, and (5) the predicate conduct must be the proximate cause of harm to the victim. *Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

"To have standing under [18 U.S.C.] § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason' of the RICO violation, which requires the plaintiff to establish proximate causation." *Canyon County v. Syngenta Seeds, Inc.,* 519 F.3d 969, 972 (9th Cir. 2008) (affirming Rule 12(b)(6) dismissal of RICO claim due to lack of standing). Injury to one's business or property requires "proof of concrete financial loss," not "mere injury to a valuable intangible property interest." *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023). A RICO injury "must be concrete, not

ACTIVE 726205026v1

prospective." *Hacker v. Hacker*, 2016 WL 4254108, at *5 (E.D. Cal. Aug. 12, 2016). This inquiry "is a question of law for the Court to determine and may be raised on a motion to dismiss." *Keel v. Schwarzenegger*, 2009 WL 1444644, at *5 (C.D. Cal. May 19, 2009) (citing *Oscar v. University Students Co-Op Ass'n*, 965 F.2d 780, 785 (9th Cir. 1992) (en banc), *cert. denied,* 506 U.S. 1020 (1992)).

i.    Cipriani Cannot Establish Standing or Causation for his RICO claims

Cipriani claims that his ban from Resorts World caused him to suffer "substantial damages since his long-time livelihood, high-stakes gambling, was taken away" and that "other casinos followed suit and [he] was effectively banned from every casino around the word." ECF No. 36, ¶ 19. Even assuming Cipirani's assertion is true (it's not), he has not, and cannot, establish standing for his RICO claims as it would require this Court to accept his speculative argument that he would have continued playing games of chance, and winning, at some unknown rate in perpetuity.

With respect to gambling or purchases of chance particularly, the Ninth Circuit analyzed the issue of RICO injury in the context of trading card purchases. *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002). In *Chaset*, plaintiffs brought a civil RICO claim, arguing "the random inclusion of limited edition cards in packages of otherwise randomly assorted sports and entertainment trading cards constituted unlawful gambling in violation of RICO." *Id.* at 1086. These limited edition cards, or insert cards, are rarer, more desirable, and have a higher value than other cards. *Id.* The court held that "[p]urchasers of trading cards do not suffer an injury cognizable under RICO when they do not receive an insert card." *Id.* at 1087. As a game of chance, "[j]ust as a card purchaser may realize a gambling loss, so a card purchaser may also find an insert card and sell it or keep it for value." *Id.* (quoting *Major League Baseball Props., Inc. v. Price*, 105 F.Supp.2d 46, 51 (E.D.N.Y. 2000)).

Other courts have likewise found that future gambling proceeds are too speculative to be an injury cognizable under RICO, or otherwise that gambling losses represent a property interest rather than an injury. *See Romano v. Torch Elecs., LLC*, 2023 U.S. Dist. LEXIS 232270, *9-10 (W.D. Mo. 2023) ("[P]urported gambling losses represent a property interest rather than an injury to property or business as required by § 1964(c)" and dismissing RICO claim); *Hannosh v. Segal*, 235 Ariz. 108,

ACTIVE 726205026v1

114 (2014) ("Voluntary gambling losses, in the absence of any allegation that the gambling is rigged, do not constitute an injury to person" under RICO); *Major League Baseball Props.,* 105 F.Supp.2d at 51; *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 824 (C.D. Cal. 2022), aff'd, No. 22-56108, 2024 WL 2239010 (9th Cir. May 17, 2024) (payment for the chance to win a prize is not an injury to business or property as required for RICO); *McLeod v. Valve Corp.*, No. C16-1227-JCC, 2016 WL 5792695, at *2 (W.D. Wash. Oct. 4, 2016) (recognizing that "[g]ambling losses are not sufficient injury to business or property for RICO standing."); *Adell v. Macon Cty. Greyhound Park, Inc.*, 785 F. Supp. 2d 1226, 1238 (M.D. Ala. 2011) ("Private plaintiffs alleging injuries resulting from their own gambling cannot establish 'injury to business or property' under RICO[.]"); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 188 (3d Cir. 2000) (the lost speculative opportunity of being able to play at a casino is not an injury to business or property).  Put simply, games of chance do not suffice to show the type of nonspeculative harm required to sustain a RICO claim.

Nor can Cipriani tether the damage and causation components of his RICO claim to his alleged reputational injuries.  Reputational harm is a personal injury that does not qualify as one to "business or property" as required by RICO. *Oscar*, 965 F.2d at 785 ("[p]ersonal injuries are not compensable under RICO") (multiple citations omitted); *see also Medical Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025) (Section 1964(c) "does not allow recovery for all harms.  Instead, by explicitly permitting recovery for harms to business and property, it implicitly excludes recovery for harm to one's person.").  "[H]arm to reputation is generally not considered an injury to 'business or property' under RICO." *C&M Cafe v. Kinetic Farm, Inc.*, 2016 WL 6822071, at *8 (N.D. Cal. Nov. 11, 2016) (citing *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c).")); *accord Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1001 (D. Nev. 2019) (noting court's prior dismissal of RICO claims as plaintiff "failed to identify a concrete financial loss, alleging only 'damage to his reputation' and 'lost opportunity for career advancement[.]'"), *aff'd in relevant part by Hunt v. Zuffa, LLC*, 2021 WL 4355728 (9th Cir. Sept. 24, 2021).

ACTIVE 726205026v1

ii.    <u>Russell Cannot Establish Standing or Causation for his RICO Claims</u>

Plaintiff Russell's effort fares no better.   "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Homes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).  This means there must be "some direct relation between the injury asserted and the injurious conduct alleged.  A link that is too remote, purely contingent, or indirect is insufficient." *Id*. (internal citations and quotations omitted). Mere foreseeability is not enough to establish proximate cause, *see Bryant v. Mattel, Inc.*, 2010 WL 3705668, at *11 (C.D. Cal. Aug. 2, 2010), and "the central question the court must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Hemi Group*, 559 U.S. at 17-18 (there must be a "direct causal connection between the predicate wrong and the harm.").

Russell claims that Defendant Sattler defrauded him out of $10 million when Sattler failed to repay Russell's 2016-2018 loan(s).  ECF No. 1, at ¶¶ 36-37.  Russell asserts that he placed Sattler into involuntary bankruptcy in 2018 and later obtained a nondischargability order from the bankruptcy court.  *Id*. at ¶ 37.  Though he admits that Resorts World did not even open until June 2021 (*id*. at ¶ 43) Russell nonetheless concludes that Resorts World allowed Sattler to gamble away money that Russell surmises was owed to him.  These are the type of "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" that courts need not accept. *State Farm Mut. Auto. Ins. Co.*, 2017 WL 3189026, at *2 (W.D. Wash. July 27, 2017), *aff'd*, 322 F. App'x 489 (9th Cir. 2009); *Chavez*, 683 F.3d at 1008 (conclusory statements and formulaic recitations of the elements of a cause of action are insufficient).

Putting aside the conclusory nature of his allegations, Russell's theory is far too attenuated to satisfy his burden.  The Supreme Court has instructed that the "general tendency" in the proximate cause analysis is "not to go beyond the first step." *Hemi Group*, 559 U.S. at 10.  The direct (i.e., "but for") cause of Russell's loss is Sattler's alleged fraud on him in 2016-2018.  That Resorts World allowed Sattler to gamble at its casino years later relates only to Sattler's apparent unwillingness to repay Russell; it is not the but-for cause of Russell's harm in the first instance.  And taking Russell's

theory to its conclusion highlights its absurdity. Every casino would in effect be required to investigate all patrons to the nth degree to determine whether they had reported debt obligations of any type and, apparently, bar them from gambling. The Strip would be a barren wasteland after weeding out those with an outstanding mortgage, car loan, student debt, medical bills, unpaid legal judgments, and other third-party liabilities.

In short, Russell admits that Resorts World had no involvement with his loan to Sattler, Sattler's bankruptcy, or Sattler's inability or unwillingness to repay Russell. Their dispute has nothing whatsoever to do with the alleged racketeering enterprise that Resorts World and the other Defendants purportedly engaged in, and Russell cannot establish a legal harm sufficient to give him standing to pursue it through a RICO claim against Resorts World.

iii.   Do Cannot Establish Standing or Causation for his RICO Claims

Do's attempt fails, too. "A claim is cognizable under RICO only if there is proximate cause, which 'requires careful consideration of the relation between the injury asserted and the injurious conduct alleged.'" *Rich v. Schrader,* 2010 U.S. Dist. LEXIS 98267, *47 (S. D. Cal. Sept. 17, 2010) (*quoting Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462 (2006)). "Direct injuries suffice, but remote or attenuated injuries do not." *Id.*; *see also Hemi Group, LLC v. New York*, 130 S. Ct. 983, 988-91 (2010) (proximate cause for RICO claim requires direct relationship between the fraud and the harm).

Do has not, and cannot, make the requisite showing that the predicate acts alleged were the but for and proximate cause of his alleged damages. The predicate acts specific to him are nos. 308-310, located at ECF No. 36, ¶¶ 256-60. They allege in general terms that Resorts World and other defendants (including numerous who have no apparent connection to or knowledge of Do) directed Do "to cease any investigation or surveillance activities" and ultimately terminated him in retaliation and/or to prevent him from providing information to law enforcement. *See id.* These predicate acts contain no specifics, i.e., who Do was investigating, who told him not to do so, when this allegedly occurred, what his relationship, if any, to or with Cipriani or Russell was, or the like. A review of these paragraphs instead reveal that the so-called predicate acts are more appropriately characterized as formulaic recitations and generalities that do not meet *Iqbal* or *Twombly*. And certainly, there is

ACTIVE 726205026v1

no factual showing of the "direct relation between the injury asserted and the injurious conduct alleged" necessary to support a RICO claim. *Hemi Group, LLC*, 559 U.S. at 9; *Homes* 503 U.S. at 268.[10]

Moreover, Do's grievance is employment in nature, evidenced by the FAC's newly-added claims for retaliation and wrongful termination. "All of the circuit courts that have considered this issue have held that an employee who is wrongfully discharged for refusing to participate in an alleged pattern of racketeering activity lacks standing to sue under § 1962(c)." *Reddy v. Litton Indus.*, 912 F.2d 291, 294 (1990) (*citing Burdick v. American Express Co.*, 865 F.2d 527, 529 (2d Cir. 1989) (per curiam) (employee terminated as a result of his complaints about employer's alleged fraudulent activities had no standing to sue under § 1962(c)); *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215-16 (5th Cir. 1988) (plaintiff employee's discharge for refusing to participate in a fraudulent bank loan scheme did not satisfy § 1962(c) standing requirement); *Nodine v. Textron, Inc.*, 819 F.2d 347, 349 (1st Cir. 1987) (employee's termination after he reported violations of Canadian customs laws and Foreign Corrupt Practices Act to his superiors did not confer standing under § 1962(c)); *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987) (employee discharged for reporting irregular transactions to the Comptroller of the Currency had no standing to sue under § 1962(c)). Because Do's supposed injury "was the result of his alleged wrongful termination and was not caused by predicate RICO acts[,]" his attempt to latch onto his co-plaintiffs' RICO claim fails.

### 3. Plaintiffs' RICO Conspiracy Claims Fails Without an Underlying Violation

Because Plaintiffs have not stated a substantive RICO violation, their second claim asserting a RICO conspiracy under 18 U.S.C. § 1962(d) necessarily fails. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (plaintiffs "cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO"); *see also Reddy*, 912 F.2d 291, 295 (as it pertains to Plaintiff Do, wrongful termination of employment is not a predicate act thus cannot serve as basis for RICO conspiracy claim). It should be dismissed with prejudice, too.

---

[10] Do was terminated when his supervisors discovered he was engaging in time theft. In particular, he clocked in and left work to take a nap and go to a sporting event for his child. He admitted to doing this on other occasions as well. Defendants are in the process of pursuing Rule 11 remedies.

ACTIVE 726205026v1

**4. The Federal Civil Rights and State Statutory Claims are Time-Barred and Inapplicable to the Facts Alleged (Counts Three, Four, and Five)**

Next, Plaintiff Cipriani asserts two claims for violations of his federal rights under 42 U.S.C. Sections 1983 and 1985, and a claim for false arrest under NRS 200.460 and 171.1235. Each fails.

i.    Count Three: 42 USC 1985(2) Retaliation and Witness Intimidation

The FAC's third claim alleges a violation of 42 U.S.C. § 1985(2) based upon defendants' alleged intimidation of Cipriani and efforts to retaliate against him for cooperating with authorities "between October 2021 and continuing until May 4, 2022[.]" ECF No. 36, ¶¶ 247-49. The claim fails for several reasons.

*First*, it is time-barred. The statute of limitations for a claim under Section 1985 is governed by the forum state's limitation period for personal injury actions. *Sternberg v. Warneck*, 2024 U.S. Dist. LEXIS 207571, *25 (D. Nev. Nov. 14, 2024) (citing *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) and *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 673-74 (9th Cir. 1991)). In Nevada, the limitations period for personal injury claims is two years. NRS 11.190(4)(e); *Sternberg*, 2024 U.S. Dist. LEXIS 207571, at *25. Viewing the allegations in the light most favorable to Cipriani, he was required to assert this claim not later than May 4, 2024, which is two years after he alleges the conduct ceased. Accordingly, it is time-barred.

*Second*, Section 1985 "require[s] 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action.'" *Sternberg*, 2024 U.S. Dist. LEXIS 207471, *24 (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)). "The Ninth Circuit requires a showing either that the courts have designated the class in question a suspect or quasi-suspect class or that congressional legislation has established that the class requires special protection." *Sternberg*, 2024 U.S. Dist. LEXIS 207471, *24-25 (citing *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)). In addition to being untimely, the third claim for relief under 42 U.S.C. § 1985(2) must be dismissed because it is inapplicable to the facts, which do not support an inference that Cipriani suffered race or other class-based, invidious discrimination. Cipriani does not – and cannot – allege otherwise.

Finally, and relatedly, the plain text of Section 1982(2) applies only in the case of a conspiracy to deter "any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein" or to otherwise retaliate against a witness for the same, or otherwise for denying "any citizen the equal protection of the laws[.]" 42 U.S.C. § 1985(2). The FAC is devoid of allegations asserting, or supporting an inference, that Cipriani's ability to testify in a federal courthouse was impeded or that he was deprived the equal protection of the law. As such, the statute is inapplicable to the alleged facts and the claim must be dismissed for this additional reason.

ii.    Count Four: 42 USC 1983 and US Const Amends IV and XIV

Plaintiffs' fourth claim for relief is brought under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution. ECF No. 36, ¶¶ 275-82. This claim is brought only by Cipriani and is premised on his "orchestrated arrest and false imprisonment." *Id*. at 44:17. It should be dismissed with prejudice for several reasons.

*First*, like a claim under Section 1985, the statute of limitations for a Section 1983 claim is governed by the forum state's statute of limitations for personal injury actions which, in Nevada, is two years. *Mwithiga v. Pierce*, 758 F.Supp.3d 1230, 1241-42 (D. Nev. 2024) (citing *Bonelli v. Grand Canyon Univ.*, 28 F.4th 948, 951 (9th Cir. 2022). Cipriani alleges the events serving as the factual basis for this claim occurred between October 2021 and May 4, 2022. ECF No. 36, ¶ 248. Taking his allegations as true, the two-year period to bring his federal civil rights claim expired May 4, 2024. Accordingly, the fourth claim for relief is time-barred.

*Second*, Cipriani's guilty plea to the criminal offense precludes him from repacking the incident as a civil claim and re-litigating it. By pleading guilty, Cipriani necessarily admitted that his arrest was lawful and that he committed a crime. *Ivers v. United States*, 581 F.2d 1362, 1367 (9th Cir. 1978) (facts necessarily determined by conviction based on guilty plea cannot be relitigated in later forfeiture proceeding). By entering a guilty plea, Cipriani "waived his right to confrontation and a jury trial" and, "[b]ecause a knowing and voluntary guilty plea constitutes an admission of all the material facts alleged in the indictment [] it is fair to estop a defendant from relitigating a common material fact…" *United States v. Bejar-Matrecios*, 618 F.2d 81, 83-84 (9th Cir. 1980) (quoting

ACTIVE 726205026v1

*McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1170, 22 L. Ed. 2d 418 (1969) and *Hernandez-Uribe v. United States*, 515 F.2d 20 (8th Cir. 1975), cert. denied, 423 U.S. 1057, 96 S. Ct. 791, 46 L. Ed. 2d 647 (1976)).

*Third*, a gaming licensee's filing of a complaint with Nevada's gaming regulators is absolutely privileged under Nev. Rev. Stat. § 463.3407, even where the complaint was filed with "malice and contains allegedly fraudulent accusations." *Hampe v. Foote*, 118 Nev. 405, 410 (2002) ("The privilege expressly encompasses any communication made by a licensee or applicant to assist the Gaming Control Board or Gaming Commission in the performance of their respective duties.  The statute further provides that such communications cannot be a ground for liability in any civil action.").  Under no circumstances does the law permit Resorts World's complaint to Gaming to serve as a basis for these or any other civil claims.  *Id*. at 409 ("An absolute privilege is an immunity, which protects against even the threat that a court or jury will inquire into a communication…Regardless of the motivation behind the respondents' letter, or any allegedly fraudulent assertions therein, the letter cannot form the basis of any civil liability.").

*Fourth*, to state a claim under Section 1983, a plaintiff must allege the deprivation of the violation of a constitutional or lawful right committed by a person acting under the color of law. *Childs v. Caesars Palace Corp.*, 2015 WL 6757536, at *4 (D. Nev. Nov. 5, 2015) (citing *West v. Atkins*, 487 U.S. 42, 48-49 (1988)).  Additionally, a plaintiff must allege that the defendant personally participated in the alleged violation. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *Hines v. Youseff,* 914 F.3d 1218, 1228 (9th Cir. 2019).

Only in "exceptional cases" will a private entity be treated as a state actor for Section 1983 liability. *O'Handley v. Weber*, 62 F.4th 1145, 1155 (9th Cir. 2023). "To be engaged in joint action, a private party must be a willful participant with the state or its agents in an activity which deprives others of constitutional rights." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1211 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Aug. 23, 2002) (cleaned up). The court "must begin its analysis with the presumption that private conduct does not constitute governmental action." *Childs,* 2015 WL 6757536, at *4 (citing *Sutton v. Providence St. Joseph* Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999)). But to overcome a motion to dismiss, a party must provide more than "a

ACTIVE 726205026v1

bare allegation of such joint action. . . the plaintiff must allege facts tending to show that [Defendants] acted under color of state law or authority." *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008) (quoting *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir.2000)) (alteration in original).

Cipriani's contention is that Resorts World acted in concert with District Attorney Steve Wolfson, evidenced by its $10,000 donation to his campaign less than a month after Cipriani's arrest. ECF No. 36, ¶ 121. The mere furnishing of information to law enforcement does not constitute a joint action under the color of law in which a private citizen would be subject to Section 1983 liability. *See Lockhead*, 24 Fed. Appx. at 806; *Collins v. Womancare*, 88-5703, 1989 WL 67061 (9th Cir. 1989) ("[M]erely complaining to the police does not convert a private party into a state actor."); *Sykes v. State of California (Dep't of Motor Vehicles)*, 497 F.2d 197, 202 n.3 (9th Cir. 1974) (finding alleged involvement of a private defendant in instigating plaintiff's criminal prosecution was irrelevant to § 1983 claim).  Indeed, the Ninth Circuit has noted that, "[a] relationship of cause and effect between the complaint and the prosecution is not sufficient [for Section 1983 liability], or every citizen who complained to a prosecutor would find himself in a conspiracy." *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).  That Resorts World allegedly donated $10,000 to Steve Wolfson's election campaign hardly plausibly demonstrates that it acted in concert with D.A. Wolfson to falsely arrest Cipriani in an effort to cover up its property-wide racketeering scheme. Cipriani's allegation to the contrary is not just legally deficient, but flirts dangerously with his Rule 11 obligations.

At bottom, Cipriani's Section 1983 claim is premised on his arrest following his altercation with Alexander. ECF No. 1 ¶ 120. Though the FAC alleges a conclusion of law that Defendants were "acting under color of state law or in joint activity with Nevada public officials, including District Attorney Steven Wolfson," there are no facts that put any Defendant on notice about what the actions under "color of state law" were or entailed.  *Id.*, ¶ 276.  Rather, Cipriani summarily alleges that Resorts World and other Defendants "pursued their ongoing campaign to retaliate against, punish and silence Plaintiff Cipriani by leveraging their long-time support of the District Attorney, to manipulate and enlist Nevada's criminal justice system to further and execute their scheme." *Id*. at ¶ 119.  Cipriani's bombastic conclusion is devoid of supporting factual allegations and fails to meet the federal pleading

standard. *Chavez*, 683 F.3d at 1008 (conclusory statements and formulaic recitations of the elements of a cause of action are insufficient). Additionally, Cipriani ignores that probable cause was found for his criminal charges and, yet again, that he entered guilty pleas. *Sprewell*, 266 F.3d at 988 (no need to accept allegations contradicted by judicially noticeable facts). He also ignores that it was a Gaming enforcement agent who investigated his cheating and submitted an affidavit to law enforcement leading to his arrest. Exhibit 1, at Exhibit Pages 017-019. Law enforcement investigated the allegations and brought charges, which were then adjudicated in court with Cipriani entering a nolo contendere plea and found guilty of lesser offense. *Id*. at Exhibit Pages 002 and 016. Resorts World's report to the authorities is insufficient to attach liability for a Section 1983 claim as a matter of law. *Lockhead*, 24 Fed. Appx. at 806; *Sykes*, 497 F.2d at 202; *Radcliffe*, 254 F.3d at 783.

In sum, the fourth claim for relief under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution claim is time-barred, precluded, and insufficiently plead. Defendants request that it be dismissed with prejudice.

iii.    Count Five: False Arrest – NRS 200.460 and 171.1235

Cipriani's fifth claim for relief is for "false arrest" under NRS 200.460 and 171.235. ECF No. 36, ¶¶ 283-290. A "false arrest" claim is instead one for "false imprisonment" under Nevada law. *Mwithiga*, 758 F. Supp. 3d. at 1243 ("Plaintiff's claim for false arrest under NRS 200.460 is actually a claim for false imprisonment[]" and dismissing as time-barred). However, "NRS 200.460 is a criminal statute which makes false imprisonment a felony but does not create a civil cause of action." *Sykes v. Las Vegas Metro. Police Dep't*, 2021 U.S. Dist. LEXIS 233190, *12 (D. Nev. Dec. 3, 2021).

Even were the Court to allow the claim to proceed as labeled, the statute of limitations for a claim for false imprisonment is two years. NRS 11.190(4)(c). Cipriani alleges he was falsely arrested on November 19, 2021. ECF No. 36, ¶ 284. The deadline for this claim was therefore November 19, 2023. Thus, Cipriani's fifth claim for relief for "false arrest" is nonexistent in Nevada and, even were the Court to allow him to replead it under an appropriate label, it would be time-barred.

In addition, by pleading guilty Cipriani necessarily and implicitly admitted that the arrest was lawful and that he committed a crime. Moreover, the court found probable cause for his arrest. For

ACTIVE 726205026v1

the same reasons discussed in the prior section, Cipriani is precluded from now arguing otherwise as part of his effort to fashion a claim for money.

Finally, the FAC is devoid of the specifics necessary to show that Resorts World, as a private entity, could be held liable for Cipriani's "false arrest" by the police department for the same reasons as discussed in the prior section.

For any of these reasons, the fifth claim for relief for "false arrest" should be dismissed with prejudice.

### 5. The FAC is Devoid of Meaningful Allegations Against KT Lim

The FAC alleges that Defendant KT Lim is the former CEO and current Chairman of Resorts World's parent company, Genting Berhad. ECF No., at ¶ 40. It theorizes that Lim "and other board members" of Genting's "failed to exercise proper oversight" of Resorts World. *Id*., ¶ 41. Plaintiffs' "hook" on Lim is Cipriani's naked claim that he wrote Lim "a detailed letter on December 6, 2021…outlining serious money laundering and criminal activities at the Resorts World casino" but that "Lim took no steps to follow up, respond or inquire of appropriate officials at Defendant Genting and at Defendant Resorts World." *Id*. This alleged letter was sent after both Russell's loan to Sattler and Cipriani's arrest.

Lim seeks dismissal for all the same reasons as does Resorts World, *supra*. In addition, he should be dismissed because the FAC contains no other factual allegations particular to Lim other than the allegation that he did nothing in response to Cipriani's unsolicited letter. There are no facts suggesting, much less supporting, any theory of liability against Lim personally. The FAC says nothing about Lim's personal involvement in Cipriani's arrest, prosecution, and ban from Resorts World. Nor does it contain any allegations linking Lim to Russell's loan to Sattler, or Sattler's alleged gambling of those proceeds. It does not even satisfy Fed. R. Civ. P. 8's baseline pleading standard, much less the heighted requirements of Rule 9(b) that apply to the FAC's allegations sounding in fraud. The claims against Lim are nothing more than mere "labels and conclusions" and the type of "formulaic recitation[s] of the elements of a cause of action" prohibited by *Iqbal*, and the factual allegation that Lim – who resides in Asia – actually received an unsolicited letter from a stranger on the other side of the world and failed to respond, thus evidencing Lim's culpability in a racketeering

ACTIVE 726205026v1

enterprise, represents the type of factual allegations that are insufficient to "rise above the speculative level" as required by *Twombly*. *Iqbal*, 565 U.S. at 678; *Twombly*, 550 U.S. at 555.

That Plaintiffs named Lim at all highlights their desperation and the deficiencies in their shotgun pleading, which itself is "altogether unacceptable" and presents the type of tactic that "exact[s] an intolerable toll on the trial court's docket, lead[s] to unnecessary and unchanneled discovery, and impose[s] unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer v. State of Fla.*, 117 F.3d 1258, 1263 (11th Cir. 1997).

### 6. The State Law Employment Claims Against Resorts World Should be Dismissed

The FAC's sixth and seventh claims are for retaliation and wrongful termination under Nevada law. They are alleged by Plaintiff Do as a former employee of Resorts World. Though Do admits that Resorts World was his employer, ECF No. 36, ¶ 38, he purports to assert these claims against various individuals and Resorts World's parent company, Genting. *See id*. at ¶¶ 291-309. Genting has not been served, Koep and Madurzak are separately moving to dismiss these claims, and Forbes and Sibella are represented by their own counsel and will presumably respond in course. Regardless, Resorts World is the only proper defendant to these claims. *See Wagers v. Robinson Nev. Mining Co.*, 2026 U.S. Dist. LEXIS 79717, *2 (D. Nev. Apr. 13, 2026) (dismissing claim for retaliation under NRS Chapter 613 against the individual defendants as they were not the plaintiff's employer as defined by the statute); *Brown v. Eddie World, Inc.*, 131 Nev. 150, 154 ("Tortious discharge requires an employer-employee relationship.") (citation and quotations omitted).

If the Court dismisses the first through fourth claims, which provide the jurisdictional hook, then it should decline to exercise supplemental jurisdiction over the sixth and seventh claims and instead dismiss them without prejudice to Do's ability to reassert them in the proper forum. 28 U.S.C. § 1367(c)(3); *see Notrica v. Board of Supervisors*, 925 F.2d 1211, 1213-14 (9th Cir. 1991) (stating that "in the usual case, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over state law claims when all federal claims have been dismissed"); *Johnson v. JRJ Invs., Inc.*, 2026 U.S. Dist. LEXIS 135620, *8 (June 18, 2026) (declining to exercise supplemental jurisdiction over state law claims where federal claims dismissed).

ACTIVE 726205026v1

## IV.   CONCLUSION

Plaintiffs' shotgun pleading is rife with incurable shortcomings.  For the reasons stated herein, Defendants Resorts World and Mr. Lim respectfully request that the Court dismiss the First Amended Complaint, with prejudice.

Dated this 30th day of July 2026.

**GREENBERG TRAURIG, LLP**

 */s/ Jason Hicks*
MARK FERRARIO, ESQ.
Nevada Bar No. 1625
JASON HICKS, ESQ.
Nevada Bar No. 13149
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Resorts World Las Vegas, LLC, and Tan Sri Lim Kok Thay aka KT Lim; Zachary Koep; and Daniel Madurzak*

ACTIVE 726205026v1

## **CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that a copy of the foregoing ***Motion to Dismiss the First Amended Complaint by Resorts World Las Vegas, LLX and KT Lim*** was filed electronically via the Court's CM/ECF system and served on all parties of record who have made an appearance in this case and are registered for participation in CM/ECF on this date.

Dated this 30th day of July 2026.

*/s/  Andrea Rosehill*
An employee of Greenberg Traurig, LLP

ACTIVE 726205026v1